394 So.2d 254 (1981)
STATE of Louisiana
v.
Donald WILSON.
No. 66799.
Supreme Court of Louisiana.
January 26, 1981.
Rehearing Denied March 2, 1981.
*255 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., J. Kevin McNary, Asst. Dist. Atty., for plaintiff-appellee.
Robert Barnard, New Orleans, Orleans Indigent Defender Program, William Noland, New Orleans, for defendant-appellant.
J. BURTON FORET, Justice Ad Hoc.[*]
Defendant, Donald Wilson, was charged by bill of information, tried and convicted of distribution of heroin, in violation of LSA-R.S. 40:966(A). The defendant filed a motion for a new trial on May 2, 1975, and after supplementation, the motion was heard and denied. The defendant was then sentenced to life imprisonment at hard labor.

FACTS
An informant, one Michael Nicholas, contacted Agent Forrest Bethay of the New Orleans regional office of Drug Enforcement Agency (DEA) and informed him that he had been in contact with the defendant. Apparently the informant told Bethay that the defendant was in the business of selling narcotics. Consequently, Bethay had the informant meet with him and Agent Raymond Egan, also of the DEA, at the DEA New Orleans Regional Office. The meeting took place at about 3:30 P.M. on April 2, 1974. At the meeting a plan was devised by which a controlled narcotics buy would be made from the defendant. Accordingly, the informant called the defendant and asked him "if he could get any heroin". The defendant allegedly stated that he could and that the price would be $175.00 for a bundle of twenty-five units. The parties then agreed to meet at the intersection of Bienville and Roman Streets in New Orleans at about 6:00 P.M. that day.
Subsequently, Bethay and the informer proceeded to the agreed upon spot and arrived there at about 5:30 P.M. Bethay and the informer arrived in one car, Egan and another undercover officer trailed behind in another vehicle in order to maintain surveillance on the planned transaction. When Bethay and the informer drove up, defendant Wilson was standing on the corner talking to a few other black males. Wilson walked over to the car and said he didn't have the "stuff" on him and that he would have it for them in about twenty minutes.
After going to pay phone to call the DEA office so as to inform those there what was *256 going on, Bethay and the informer returned to the meeting place at about 6:15 P.M. There they observed an unknown black male seated in a parked 1973 Oldsmobile in the 1800 block of Bienville. This person called the informer over and told him that Wilson would return. A few minutes later the defendant arrived. Wilson walked over to Bethay's vehicle and asked the informer to go with him to a pool hall located at the corner of Bienville and Roman. A few minutes later the informer returned and got back into Bethay's vehicle. At that point Wilson walked up to the vehicle and Bethay noticed that he was acting "strange like he didn't want to do the deal". It turned out that the defendant suspected the informer of being a police officer. This misunderstanding was cleared up and the defendant told Bethay and the informer to drive down to the corner of Roman and Iberville and wait. A few minutes later Wilson drove up riding as a passenger in the previously observed automobile. Wilson now told agent Bethay that he would need the money "up front". Bethay refused to comply and threatened to call off the deal. Wilson then simply told Bethay, "Okay, pull over behind me at the corner of Iberville and Derbigney, which is a block away". Bethay did so and at that point, the defendant Wilson got out of his car and gave the agent twenty-six units of heroin in exchange for $175.00 in recorded currency. Agent Egan, accompanied by another agent, observed the narcotics transaction from a trailing unmarked vehicle. At defendant's trial, both he and Bethay testified for the State and told essentially the same story.
After receiving the narcotics, agent Bethay and the informer returned to the DEA office. The contraband was then mailed to a DEA lab in Miami where it was identified as heroin. Subsequently, a warrant of arrest was obtained and the defendant was arrested.

ASSIGNMENT OF ERRORS NUMBERS 1 and 2
In these two assignments, defense counsel contends that the trial court erred in denying his (1) motion for a new trial and (2) supplemental motion for a new trial. The defendant based these motions on a number of grounds in the trial court. However, on appeal, he now alleges only two as the basis upon which he argues that the trial court erred in failing to grant these motions.
First, defendant argues that the prosecution against him should have been instituted upon indictment by the grand jury. Second, defendant argues that it was prejudicial error for the trial court to refuse to compel one of his witnesses to answer questions propounded to him by defense counsel.

I.
LSA-C.Cr.Proc. Article 851 provides that:
"Art. 851. Grounds for new trial
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
(1) The verdict is contrary to the law and the evidence;
(2) The court's ruling on a written motion, or an objection made during the proceedings, shows prejudicial error;

(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;
(4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment; or
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although *257 the defendant may not be entitled to a new trial as a matter of strict legal right." (Emphasis ours.)
Further, LSA-C.Cr.Proc. Article 858 provides that:
"Neither the appellate nor supervisory jurisdiction of the supreme court may be invoked to review the granting or the refusal to grant a new trial, except for error of law."
We find no merit in defendant's first argument that it was error to allow the prosecution to proceed on the basis of a bill of information, in light of Article 1, § 15 of the Constitution of Louisiana (1974), which provides:
"Section 15. Prosecution of a felony shall be initiated by indictment or information, but no person shall be held to answer for a capital crime or a crime punishable by life imprisonment except on indictment by a grand jury. No person shall be twice placed in jeopardy for the same offense, except on his application for a new trial, when a mistrial is declared, or when a motion in arrest of judgment is sustained."
Defendant was charged with a violation of LSA-R.S. 40:966(A) which carries a mandatory life sentence. Accordingly, defendant argues, the Constitution of Louisiana requires that the charge be brought by grand jury indictment.
Prosecution of defendant was instituted by bill of information on August 14, 1974. Applicable at that time were LSA-Const. (1921), Article 1, § 9 and LSA-C.Cr. Proc. Article 382 making institution of prosecution by indictment a requirement in prosecutions for capital offenses only. Hence, prosecution of defendant was validly initiated according to the law then in force. State v. Smith, 329 So.2d 725 (La.1976).
Moreover, the State could properly try Wilson on this charge, even after the effective date of the 1974 Constitution because Article 14, § 23 of that Constitution provides that:
"all ... suits, proceedings, civil or criminal liabilities, prosecutions ... and rights existing on the effective date of this Constitution shall continue unaffected".
The criminal prosecution which had been properly instituted against Wilson and which was pending on the effective date of the 1974 Constitution remained a valid prosecution on which he could be tried and convicted.
Therefore, this argument of defendant provides no basis upon which a motion for a new trial should have been granted by the trial court.

II.
Defendant's second argument is that the trial court committed prejudicial error when it ruled against him and failed to compel Thomas Frank (a witness called by defendant) to testify in response to defense counsel's questions.
Defendant's direct examination of Thomas Frank was interrupted as soon as it started by the prosecutor and the court who proceeded to inform the witness of his privilege against self-incrimination. The end result was that Thomas Frank refused to testify, and the trial court allowed him to leave the stand with no chance for defense counsel to continue his examination.
The Fifth Amendment to the U.S. Constitution reads, in pertinent part:
"No person ... shall be compelled in any criminal case to be a witness against himself."
This Fifth Amendment privilege against self-incrimination in the Federal Constitution is embodied in the Louisiana Constitution in the clause, "No person shall be compelled to give evidence against himself". LSA-Const. (1974), Article 1, § 16. The principle expressed in the Federal Constitution was made applicable to the states in Malloy v. Hogan, 378 U.S. 1, 11, 84 S.Ct. 1489, 1495, 12 L.Ed.2d 653 (1964), where the Supreme Court declared:
"What is accorded is a privilege of refusing to incriminate one's self, and the feared prosecution may be by either federal or state authorities ... It would be incongruous to have different standards *258 determine the validity of a claim of privilege based on the same feared prosecution, depending on whether the claim was asserted in a state or federal court. Therefore, the same standards must determine whether an accused's silence in either a federal or state proceeding is justified."
In Hoffman v. United States, 341 U.S. 479, 486, 487, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951), the Supreme Court elaborated on the content of the Federal standard, particularly noting its application to the protection of witnesses as well as criminal defendants:
"The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime. (Patricia) Blau v. United States, 340 U.S. 159 [71 S.Ct. 223, 95 L.Ed. 170 (1950). But this protection must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer. Mason v. United States, 244 U.S. 362, 365 [37 S.Ct. 621, 622, 61 L.Ed. 1198] (1917), and cases cited. The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himselfhis say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified, Rogers v. United States, 340 U.S. 367 [71 S.Ct. 438, 95 L.Ed. 344] (1951), and to require him to answer if `it clearly appears to the court that he is mistaken.' Temple v. Commonwealth, 75 Va. 892, 899 (1881). However, if the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee. To sustain the privilege it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim `must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence.' See Taft, J., in Ex parte Irvine, 74 F. 954, 960 (C.C.S.D. Ohio, 1896)."
The privilege against self-incrimination must be liberally construed in favor of the accused or witness. Hoffman v. United States, supra. However, while the accused may assert the privilege as an excuse for refusing to take the stand, a witness may assert the privilege only with respect to particular questions. In Re Parker, 357 So.2d 508 (La.1978); State v. Hoover, 54 So.2d 130 (La.1951).
Accordingly, the proper exercise of the privilege requires that the witness take the stand and answer the questions put to him, save for those instances where it is "evident from the implication of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result". Hoffman v. United States, supra. By failing to comply with this standard for the legitimate exercise of the privilege, the trial court erred in restricting the defendant's constitutional right to present a defense, in violation of LSA-Const. (1974), Article 1, § 16; United States Constitution, Amendment 6.
"The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present the defendant's version of the facts as well as the prosecutor's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law."

Washington v. Texas, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967).
*259 The State argues, in its brief, the defendant failed to make a contemporaneous objection to this ruling of the trial court as required by LSA-C.Cr.Proc. Article 841[1]. However, we find from the record that defendant made known to the trial court the action which he desired it to take and his objection to the action which the court did in fact take. We also find that the grounds for defendant's objection were obvious to all concerned.
We hold that the trial court's action in refusing to order Thomas Frank to answer defense counsel's questions and to assert his privilege only to those questions, the answer to which may have incriminated him, constituted an error of law and violated the defendant's right to compel the attendance of witnesses and to present a defense as guaranteed by LSA-Const. (1974), Article 1, § 16 and Amendment 6 to the United States Constitution.
Further, this ruling by the trial court shows prejudicial error upon which the trial court should have granted defendant's motion for a new trial under the mandatory provision of LSA-C.Cr.Proc. Article 851, supra.
For the foregoing reasons, the conviction and sentence are reversed and the defendant is granted a new trial.
REVERSED, NEW TRIAL ORDERED.
LEMMON, J., concurs and assigns reasons.
MARCUS, J., dissents and assigns reasons.
LEMMON, Justice, concurring.
One solution for this complex problem is the grant of defense witness immunity. See my concurring opinion in State v. Bice, 390 So.2d 1270 (La.1980). When the issue is fairly presented in a future case, this court should determine the question of judicial authority to grant immunity to defense witnesses upon adequate showing of appropriate circumstances.
MARCUS, Justice (dissenting).
The trial judge was aware that Palmas Frank, a witness called by defendant, was a participant in the transaction defendant was on trial for. He was originally a codefendant, but the state's case against Frank was nolle prossed and the United States Attorney's Office obtained an indictment against him from the Federal Grand Jury. Thus, the trial judge realized that any answer to any relevant question directed to Frank would incriminate him and could be used against him during his trial on the federal charge. Under these circumstances, I am unable to say that the trial judge committed reversible error when he informed the witness of his privilege against self-incrimination and allowed him to leave the stand without testifying. Accordingly, I respectfully dissent.
NOTES
[*] Judges Edmond L. Guidry, Jr., J. Burton Foret, and P. J. Laborde, Jr. of the Court of Appeal, Third Circuit, participated in this decision as Associate Justices ad hoc, joined by Chief Justice John A. Dixon, Jr., and Associate Justices Walter F. Marcus, Jr., Fred A. Blanche, Jr., and Harry T. Lemmon.
[1] "An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.

The requirement of an objection shall not apply to the court's ruling on any written motion."