432 So.2d 355 (1983)
STATE of Louisiana
v.
Jesse M. TREVATHAN.
No. 82 KA 1049.
Court of Appeal of Louisiana, First Circuit.
May 17, 1983.
*356 James L. Alcock, Asst. Dist. Atty., Houma, for plaintiff.
Keith M. Whipple, Houma, for defendant.
Before LOTTINGER, COLE and CARTER, JJ.
LOTTINGER, Judge.
This criminal appeal arises from the conviction for second-degree murder, La.R.S. 14:30.1, of Jesse M. Trevathan. Defendant received the mandatory sentence under La. R.S. 14:30.1, life imprisonment at hard labor, without benefit of probation, parole, or suspension. Defendant appeals his conviction and sentence, specifying five assignments of error.

FACTS
At about 8:30 p.m. on Wednesday, July 22, 1981, defendant, Jesse Trevathan, knocked at the door of a trailer in Terrebonne Parish rented by Rick Whitener. George Cunningham, Rick Whitener's roommate, informed the defendant that Whitener had not yet returned from work, and the defendant left.
At approximately 9:00 p.m. the same evening, the defendant knocked again at the door of the trailer. When Cunningham answered the door, the defendant produced a pistol and ordered Cunningham to back up. Defendant then entered the trailer with Craig Smith and his brother, Carey. One or both of the Smith brothers were armed with clubs.
After searching the trailer, the Smiths cut the telephone cord and tied Cunningham's hands behind his back. The intruders then sat down to await Whitener's return. Cunningham was informed that Whitener had "caused difficulties" for Carey Smith. During the wait, defendant kept the weapon in his possession leveled at Cunningham.
Whitener returned home at about 9:30 p.m. The three intruders hid in the bedroom until Whitener entered the trailer, then pounced upon him. Whitener's hands and neck were bound with cords taken from appliances in the trailer. Shortly thereafter, the five men left the trailer, climbing into an automobile. Craig Smith drove with Cunningham and Carey Smith beside him in the front seat. Defendant sat with Whitener in the back seat.
The vehicle was driven to the Devil's Swamp area in northern Terrebonne Parish. George Cunningham was permitted to leave the vehicle, his hands still tied. A short time later, while walking toward the highway, Cunningham heard a series of gunshots.
*357 Defendant was arrested for the murder of Rick Whitener on July 29, 1981, as were Craig and Carey Smith. Later that day, the body of Rick Whitener was recovered from Bayou Blue in the area of Devil's Swamp. The remains of Rick Whitener were autopsied at the coroner's office in New Orleans and two slugs were taken from the head of Whitener. Dr. Richard Tracy, pathologist for the Orleans Parish Coroner's Office, gave the cause of death as multiple gunshot wounds to the head.

TRIAL COURT
Jesse Trevathan was indicted for second degree murder for the killing of Rick Whitener. Following a trial by jury, defendant was found guilty on September 14, 1982. He was sentenced to life imprisonment without benefit of probation, parole, or suspension of sentence on October 8, 1982. This criminal appeal followed.

ASSIGNMENTS OF ERROR
Defendant-appellant, Jesse Trevathan, relates the following assignments of error:
1. The trial court erred in overruling defendant's objection to venireman Bruce Theriot.
2. The trial court erred in failing to order a mistrial in that the indictment and defendant's plea were not read to the jury in proper sequence.
3. The district court erred in failing to allow defense counsel to interrogate Carey Smith and his brother Craig Smith, both of whom were co-defendants, before the jury.
4. The verdict of the jury was contrary to the law and the evidence.
5. The sentence of the trial court was excessive.

ASSIGNMENT OF ERROR NO. 1
This assignment was not briefed on appeal. Under Rule 2-12.4 of the Uniform Rules of the Courts of Appeal, we consider this assignment as abandoned.

ASSIGNMENT OF ERROR NO. 2
At trial, neither the clerk nor the trial judge read the indictment and plea of the defendant to the jury prior to opening statements, thus abrogating the normal order of trial set out in La.Code Crim.P. art. 765. After two witnesses testified for the state, the court noted that this reading had been inadvertently omitted. The court then conferred with counsel and had the minute clerk read the indictment and plea to the jury.
Defense counsel did not object to the omission at the time of its occurrence; thus, under La.Code Crim.P. art. 841 same is deemed waived.
Moreover, we fail to see what prejudice defendant could have suffered due to the omission. The record reflects that the trial judge had informed the jury of the charge during voir dire examination. In State v. Cardinale, 251 La. 827, 206 So.2d 510 (1968), cert. granted 393 U.S. 959, 89 S.Ct. 388, 21 L.Ed.2d 372, writ dismissed 394 U.S. 437, 89 S.Ct. 1161, 22 L.Ed.2d 398, the Supreme Court held that such an omission was cured where the court itself took cognizance of the omission, interrupted the proceedings and ordered that the indictment and plea be read to the jury. In State v. Cardinale, as well as in State v. Leslie, 244 La. 921, 155 So.2d 19 (1963), it was held that the failure to contemporaneously object to such an omission constituted a waiver.
The assignment lacks merit.

ASSIGNMENT OF ERROR NO. 3
During trial, the defense attempted to call Carey Smith to the witness stand. The state objected outside the hearing of the jury, arguing that the Smith brothers had been advised by their attorney to take the Fifth Amendment to all questions other than their names. Carey Smith took the stand (outside the hearing of the jury), gave his name, asserted his privilege in response to an inquiry as to his marital status on July 22, 1981, and then stated that he would take the Fifth to any and all other questions asked. Although only Carey *358 Smith testified and invoked his privilege, it was stipulated that Craig Smith's responses would be identical. The trial judge excused both Smiths from testifying further.
The defendant argues the trial judge committed reversible error in allowing these witnesses to assert a "blanket"-type privilege, rather than asserting the privilege on a question-by-question basis, and in refusing to allow defense counsel to force the Smiths to assert their privilege before a jury.
The Louisiana Supreme Court stated in State v. Coleman, 406 So.2d 563 at 566-567 (La.1981):
"The Fifth Amendment to the United States Constitution reads in pertinent part:
`No person ... shall be compelled in any criminal case to be a witness against himself.'
This privilege against self-incrimination in the Federal Constitution is embodied in the Louisiana Constitution in the clause: `No person shall be compelled to give evidence against himself.' Article 1, Section 16, Louisiana Constitution (1974). The principle espoused in the Federal Constitution was made applicable to the states in Malloy v. Hogan, 378 U.S. 1, 11, 84 S.Ct. 1489, 1495, 12 L.Ed.2d 653, 661 (1964).
"The protection must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer. Hoffman v. United States, 341 U.S. 479, 487, 71 S.Ct. 814, 818, 95 L.Ed. 1118, 1124 (1951). As explained in Hoffman:

`The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himselfhis say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified, ... and to require him to answer "if it appears to the court that he is mistaken."` (Citation omitted.) Hoffman, id.
"Further, it is well settled that whereas an accused may assert the privilege as an excuse for refusing to take the stand, a witness may assert the privilege only with respect to particular questions. State v. Wilson, 394 So.2d 254 (La.1981); In re Parker, 357 So.2d 508 (La.1978). Hence, it will be constitutionally required in virtually every case that the witness invoke the Fifth Amendment protection question by question. However, we have recognized certain unique instances where it is evident from the nature of the question and the position of the witness that an answer or explanation of a refusal to answer any question posed could result in an injurious disclosure. See Hoffman v. United States, supra; State v. Darby, 403 So.2d 44 (La.1981); State v. Wilson, supra." (emphasis ours)
The record indicates that both Craig and Carey Smith were indicted for second degree murder and two counts of simple kidnapping in connection with the events of July 22, 1981. At the time of Trevathan's trial, Craig Smith had apparently been tried on the murder charge, convicted of manslaughter, and sentenced to twenty-one years in the penitentiary. However, since kidnapping charges remained pending against Craig, and kidnapping and murder charges were pending against Carey, both could validly assert their Fifth Amendment privilege.
We are of the opinion that the trial judge did not err in allowing the witness(es) to assert a "blanket" privilege. Although this practice was held to constitute reversible error in State v. Wilson, 394 So.2d 254 (La.1981), we find that the factual circumstances herein constitute "unique circumstances where it is evident from the nature of the question and the position of the witness that an answer or explanation of a refusal to answer any question could result in an injurious disclosure," State v. Coleman, supra. Here, as was the case in State v. Darby, 403 So.2d 44 (La.1981), cert. den. 454 U.S. 1152, 102 S.Ct. 1022, 71 L.Ed.2d 308, any question directed toward the events of July 22, 1981 could not have been answered by the Smiths without risk of an incriminating disclosure. Colloquoy between *359 counsel and the bench during the trial of Trevathan indicated that some of the "difficulties" Rick Whitener had caused Carey Smith were apparently related to Smith's wife. Thus, under these factual circumstances, Carey Smith could not have answered even the seemingly innocuous inquiry as to his marital status without risking "opening the door" to further inquiries which might prove incriminating. Moreover, at no time, either in the trial court or in this court, has the defendant indicated what information he had sought to obtain from the Smiths by propounding non-incriminating questions; thus, defendant has failed to demonstrate that the trial court's allowing the Smiths to assert a "blanket" privilege prejudiced his ability to present a defense.
Finally, it is well-settled that claims of privilege are preferably determined outside of the presence of the jury, State v. Edwards, 419 So.2d 881 (La.1982), State v. Berry, 324 So.2d 822 (La.1975), cert. den., 425 U.S. 954, 96 S.Ct. 1731, 48 L.Ed.2d 198. It is improper to call a witness to the stand solely to impress upon the jury the fact that the witness will claim the privilege against self-incrimination, State v. Johnson, 404 So.2d 239 (La.1981), cert. den., 456 U.S. 925, 102 S.Ct. 1970, 72 L.Ed.2d 440; State v. Berry, supra. The trial judge did not err in bringing Carey Smith to the witness stand outside of the presence of the jury.
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 4
It appears that this assignment is directed toward the sufficiency of the evidence, see State v. Donahue, 408 So.2d 1262, 1268 (La.1982). Although this issue was not raised by motion for a new trial (see La. Code Crim.P. art. 851(1)), we shall consider the issue when raised by formal assignment of error, see State v. Edwards, 400 So.2d 1370 (La.1981) and cases cited therein.
The proper standard of review of the sufficiency of evidence was enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under Jackson a reviewing court is to view "the evidence in the light most favorable to the prosecution" to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573 (emphasis in the original); State v. Fuller, 414 So.2d 306 (La.1982); State v. West, 408 So.2d 1302 (La.1982).
At the trial, George Cunningham testified that defendant and the Smiths came to the trailer he shared with Rick Whitener, produced a pistol, assaulted and bound Cunningham, and assaulted and bound Whitener when he arrived. Cunningham further testified that Trevathan kept the pistol pointed at him and/or Whitener during the entire time Trevathan was in the trailer, although Cunningham could not observe whether Trevethan continued to level the pistol at Whitener while the two shared the back seat of the automobile. At one point prior to leaving the trailer, the defendant held the pistol to Whitener's head and told him to shut up or be killed on the spot. Cunningham testified that he and Whitener were kidnapped and taken to a remote area, where Cunningham was released. A short time later, Cunningham heard a series of gunshots, yet the sounds seemed to emanate from the direction opposite to that in which the vehicle departed.
Michael Detiveaux testified, without objection, that he saw a .25 caliber pistol at the trailer of Carey Smith on July 22, 1981. George Cunningham testified, without objection, that the pistol held by defendant that night was a .25 caliber automatic. Detective Charles Modrynski of the Terrebonne Parish Sheriff's Department testified that he found three spent .25 caliber casings at the site where Rick Whitener's body was pulled from Bayou Blue. This site was in the same general geographic area, i.e., Devil's Swamp, where Cunningham was released by his captors. Dr. Tracy testified that he removed two slugs from the head of the victim, and gave gunshot wounds to the head as the cause of death.
*360 It is arguable that the above circumstantial evidence would alone suffice to support a conviction under La.R.S. 15:438, i.e., it would exclude every reasonable hypothesis of innocence. We need not make this determination, however, in light of the testimony of Michael Detiveaux. Detiveaux testified that Trevathan stated to him on July 23, 1981, the day after Cunningham and Whitener were abducted, that he, Trevathan, had shot Rick Whitener.
Defendant attacks the testimony of Detiveaux as not being credible. We note only that it is the function of the jury as the trier of fact to evaluate the witnesses' credibility; nor are we vested with appellate review of facts in criminal appeals, Louisiana Constitution of 1974, Article V, Sec. 5(C).
In light of Detiveaux's testimony and the circumstantial evidence adduced, we find that the Jackson standard for the sufficiency of evidence was met in the instant case, i.e., any reasonable trier of fact could have found that Jesse Trevathan participated in the killing of Rick Whitener, either as the trigger-man or as a principal to the crime, La.R.S. 14:24.
This assignment is meritless.

ASSIGNMENT OF ERROR NO. 5
The sentence meted out to defendant, i.e., life imprisonment without benefit of probation, suspension, or parole, is statutorily mandated and has been held not to constitute cruel and unusual punishment, State v. Graham, 422 So.2d 123 (La.1982), State v. Parker, 416 So.2d 545 (La.1982).
Defendant argues, however, that he has been denied equal protection of the law because Craig Smith was found guilty of manslaughter and sentenced to twenty-one years under the identical set of facts. This argument is fallacious. There is no constitutional requirement that co-defendants receive equal treatment. State v. Quimby, 419 So.2d 951 (La.1982), State v. Rogers, 405 So.2d 829 (La.1981).
This assignment is meritless.

DECREE
Therefore, for the above and foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.