NORRIS, Judge.
Defendant, Jim Young, appeals his jury conviction of second degree murder in violation of La.R.S. 14:30.1 assigning two errors:
(1) The trial court erred in granting a blanket Fifth Amendment privilege to HARRY CALVIN, a witness called on behalf of defendant.
(2) The trial court erred in failing to grant defendant’s motion for mistrial after the District Attorney, over objection of defense counsel, deliberately elicited inadmissible testimony concerning other crimes committed by the defendant.
Finding no merit to either, we affirm.
FACTS
On December 13, 1982, defendant, Terry Spears Zenor and Harry Calvin went to the Tornado Lounge in Bossier City in Calvin’s vehicle. After their arrival, two female employees of the lounge became involved in an altercation with Terry Zenor over a *762 rabbit coat which the employees felt had been previously taken from the lounge. During this argument, the defendant interceded and struck the husband of one of the employees. At some point thereafter, Leo Armstrong, who was sitting at the bar drinking in a visibly intoxicated condition, made some comments directed to the defendant to the effect that if he was going to cause trouble that he should leave. Both men resumed their seats and words were exchanged between them for several minutes. Both men then left their seats and defendant advanced toward Armstrong with a knife in his hand. Defendant then stabbed Armstrong in the abdomen with the knife which he removed and brandished in front of him in the direction of the occupants of the lounge who were told to stay away. Defendant backed through the door of the lounge accompanied by Zenor and Calvin and left in Calvin’s vehicle. A description of the vehicle was obtained by one of the lounge’s customers and furnished to the police. Defendant and his companions were later apprehended at Kelly’s Truck Stop on Interstate 20 west of Shreveport.
Meanwhile, Armstrong was taken to the L.S.U. Medical Center in Shreveport where he died a few hours later after surgery from loss of blood which caused shock and the collapse of his heart and respiratory system.
Defendant was indicted for second degree murder. Zenor and Calvin were charged with being accessories after the fact to the crime of second degree murder in violation of La.R.S. 14:25. At defendant’s trial, both Zenor and Calvin were called as witnesses on behalf of the defendant. While Zenor testified that she had observed the victim with a knife, Calvin asserted his Fifth Amendment privilege against self incrimination and refused to testify. It is the testimony of both of these witnesses that forms the basis for the assignments of error raised by this appeal.
ASSIGNMENT OF ERROR NO. 1
After being called to the stand, Calvin gave his name and address. The first question posed thereafter was:
Q. Mr. Calvin, on December 14 at the Tornado Lounge, did you see a gentlemen (sic) by the name of Lebo [Leo Armstrong] with a knife? [Bracketed material added.]
Calvin responded that he wished to plead the Fifth Amendment, and the trial court removed the jury. Out of the jury’s presence, the trial court asked Calvin if he had consulted with his attorney and if he desired to exercise the rights guaranteed to him under the Fifth Amendment. Calvin answered both questions affirmatively. While defense counsel responded that there were some matters about which he could ask Calvin that would not be incriminating to him and objected to the court’s allowing the witness to refuse to answer all questions on that ground, he did not inform the court of the nature of the questions that he might ask that might not be incriminating. The court then noted that the first question asked dealt directly with the events of defendant’s crime and indicated that it did not know exactly what questions defendant intended to ask but that any questions regarding the events surrounding the crime itself would tend to incriminate the witness thereby allowing him to assert this constitutional right. The court then asked defense counsel if he wished to ask the witness further questions and defense counsel stated that he had no further questions since “I think it’s clear what his responce (sic) would be.” The jury was returned and the witness was excused.
Defendant argues that absent peculiar circumstances it is reversible error for a trial court to allow a witness a blanket privilege under which he refuses to answer all questions since that procedure violates the defendant’s right to present a defense guaranteed by the Sixth Amendment to the United States Constitution and Article I, § 16 of the Louisiana Constitution of 1974.[1]
*763 The privilege against self incrimination[2] must be liberally construed in favor of the party asserting it; to sustain the privilege it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim should be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence. State v. Wilson, 394 So.2d 254 (La.1981). See also In Re Parker, 357 So.2d 508 (La.1978).
The general rule is that it is reversible error to allow a witness to claim a blanket privilege. State v. Darby, 403 So.2d 44 (La.1981); State v. Wilson, supra. However, that rule is subject to exceptions. See State v. Edwards, 419 So.2d 881 (La.1982); State v. Coleman, 406 So.2d 563 (La.1981); State v. Darby, supra; State v. Wilson, supra. The defendant has no absolute right to force a witness claiming his privilege against self incrimination to invoke that right before the jury and have the trier of fact draw an inference from the invocation of the privilege. State v. Edwards, supra.
Defendant contends that it was evident from the nature of the questions which could have been posed to Calvin and from Calvin’s position that an answer or an explanation of a refusal to answer all potential questions would not have resulted in injurious disclosure. However, the record is devoid of any reference to the nature or substance of any relevant questions which might have properly been posed to this witness. While arguing that there were questions which could have been asked this witness which would not incriminate him in the criminal action pending against him at the time of this trial, no questions were posed for the court’s consideration other than whether the witness had seen the victim armed with a knife. - After ruling that the witness was entitled to assert the privilege to questions regarding the events and circumstances surrounding the crime itself, the trial court asked defense counsel if he had further questions and he replied that he did not. Thereafter, the witness was dismissed.
It is evident from the record that the testimony sought to be elicited from this witness concerned whether or not the victim was armed with a knife at the time of the stabbing. We are convinced, as was the trial court, that answers given by this witness in connection with the events surrounding the stabbing coúld result in injurious disclosure to this witness in regard to the charge pending against him because one of the elements of the crime with which he was charged as defined by La. R.S. 14:25 is “knowing or having reasonable ground to believe that [the offender who is aided, concealed or harbored] has committed the felony.” Any disclosure that the witness was actually present at the scene during the commission of the crime or what the witness observed at the time of the commission of the crime would certainly be relevant to the future prosecution of this witness and could be incriminating in that a responsive answer could disclose facts which could be used against the witness in any future prosecution. See In Re Parker, supra.
The trial court did not err in ruling that any testimony by Calvin about the events of the night of December 13, 1982 might have incriminated him. In this factual context, no purpose would have been served *764 by requiring a question by question assertion of Calvin’s privilege against self incrimination. Compare State v. Coleman, supra; State v. Edwards, supra; State v. Darby, supra. It was entirely proper to dismiss this witness once the trial court determined that Calvin would refuse to answer questions concerning the events surrounding the crime itself and defense counsel stated for the record that he did not intend to ask Calvin any further questions. The trial court’s ruling did not constitute the granting of a reversible error blanket privilege.
*763 No person ... shall be compelled in any criminal case to be a witness against himself.
*764 This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 2
In connection with this assignment of error, defendant argues that it was reversible error for the trial court to fail to grant a mistrial after a witness’ impermissible reference to the defendant’s criminal background. On cross examination of Terry Zenor, the state asked:
Q. When did you first meet Mr. Young?
After defendant’s objection, the jury was removed. In argument in support of the objection defense counsel stated that the information which the state was seeking was evidence of other crimes committed by the defendant because the defendant and this witness had previously been incarcerated together in Montana. The court overruled the objection, the jury was returned and the question was rephrased:
Q. When did you first meet the defendant?
A. I met him in jail in Montana.
The defense objected and asked for a mistrial. The motion was denied, and no admonition was requested by the defendant.
A direct or indirect reference to a crime committed or alleged to have been committed by a defendant, as to which evidence would be inadmissible made within the hearing of the jury by the judge, district attorney, or a court official, during trial or in argument would require a mistrial on motion of the defendant. La.C. Cr.P. Art. 770(2). A defense witness is not a court official and the unresponsive remarks of this defense witness were at best unsolicited indirect references to other crimes which are not imputable to the state. Accordingly, La.C.Cr.P. Art. 771 is applicable. State v. Stucke, 419 So.2d 939, 951 (La.1982). That article provides:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
Consequently, in the absence of clear prejudice, the defendant is entitled only to an admonition, if requested, to the jury to disregard the objectional remark of the witness. State v. Stucke, supra; State v. Lewis, 315 So.2d 626 (La.1975). No request for an admonition was made, and the mistrial was properly denied because there was no showing made that an admonition would not have been sufficient to assure the defendant a fair trial.
This assignment of error is without merit.
For the foregoing reasons, defendant’s conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.

. Article I, § 16 of the Louisiana Constitution of 1974 reads:
*763 Every person charged with a crime is presumed innocent until proven guilty and is entitled to a speedy, public, and impartial trial in the parish where the offense or an element of the offense occurred, unless venue is changed in accordance with law. No person shall be compelled to give evidence against himself. An accused is entitled to confront and cross-examine the witnesses against him, to compel the attendance of witnesses, to present a defense, and to testify in his own behalf.

. The Fifth Amendment to the U.S. Constitution reads, in pertinent part: