# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                                    NEWS RELEASE #053

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **5th day of December, 2018**, are as follows:

**PER CURIAM**:

2017-K-0908       STATE OF LOUISIANA  v. JEREMY WILSON (Parish of Washington)
                  We find that the trial court's evidentiary rulings, when combined
                  with its failure to properly address the attendant privilege
                  invocations, violated defendant's right to present a defense.
                  Therefore, we reverse the judgment of the court of appeal, and
                  remand this matter to the district court for a new trial.

                  REVERSED AND REMANDED.

                  GUIDRY, J., dissents and assigns reasons.

**SUPREME COURT OF LOUISIANA**

**No. 17-K-0908**

**STATE OF LOUISIANA**

**VERSUS**

**JEREMY WILSON**

**ON WRIT OF CERTIOARI TO THE COURT OF APPEAL,
FIRST CIRCUIT, PARISH OF WASHINGTON**

**PER CURIAM**

On March 8, 2008, the Washington Parish Sheriff's Office responded to a residential fire in Franklinton and discovered two bodies burned beyond recognition. The victims were later identified as the occupants, Donald Wayne Demille Williams ("Demille") and Kimberly Sims. Autopsies revealed both were fatally shot in the head before being burned.

A grand jury indicted defendant, Jeremy Wilson, and co-defendant, Erick Townsend, with two counts of first degree murder. The trial court severed the matters, and thereafter, Townsend pleaded guilty to two counts of manslaughter in exchange for his agreement to testify at defendant's trial. A Washington Parish jury ultimately convicted defendant of two responsive counts of second degree murder, and the trial court imposed consecutive life sentences.

The evidence presented by the state at trial was sufficient to support defendant's convictions, but it was by no means overwhelming. The state called Townsend as a witness, but he refused to testify despite being held in contempt and having habitual offender proceedings instituted against him. Before pleading guilty, Townsend had led detectives to a creek where they recovered three weapons. Forensic analysis presented to the jury revealed that these weapons were consistent

with projectiles recovered from the victims' bodies in caliber only; the state's expert could not offer more conclusive ballistic analysis.

The state also presented testimony from two witnesses whom it had granted immunity: Britney Farrell, mother to two of defendant's children; and Felicia Brewer Wilson, defendant's wife and mother to one of defendant's children. Britney had told the police that defendant confessed his role in the murders to her. Felicia had told the police that she drove Townsend and defendant to road near a wooded area on the night of the murders, let them out of her car, and—after they returned dressed in different clothes and wearing masks and bloody gloves—drove them to dispose of the weapons. Prior to trial, both women recanted these statements in notarized affidavits.

At trial, Britney largely testified to a lack of knowledge concerning all of her prior statements. Over defense objections, the state questioned Britney by reading from, and asking her to verify, large swaths of her statements describing defendant's purported confession. Britney did not dispute that she made the earlier statements, but she generally declined to express whether she believed they were true. She admitted to having child custody issues with defendant around the time she first spoke with the police.

Felicia testified at trial in conformity with the statements she had previously made to the police. She disavowed her recantation, explaining that she had only executed this affidavit to get defendant out of jail. On cross-examination, Felicia explained that she tried to contact defendant and Townsend via phone call and text message after she let them out of her car. Defendant challenged this testimony during his case-in-chief by calling a detective who noted that the transaction logs for cell phones belonging to defendant and Felicia showed no activity during the suspected time of the murders.

2

At trial, defendant wished to pursue the theory of third-party guilt, as supported by evidence that the police had previously arrested three other people for the murders: Ricky Magee, Monica Simmons, and Andrew James. In connection with this theory of innocence, defendant sought to call as witnesses—or introduce the out-of-court statements of—multiple individuals, including two of the alleged guilty parties. The trial court ruled most of these witnesses' proposed testimony or statements inadmissible as violations of the prohibition against hearsay.[1] Defense counsel proffered all of the excluded statements into evidence, as well as several others that became strategically useless in light of the trial court's evidentiary rulings.

The court of appeal affirmed in a split-panel decision. *State v. Wilson*, 15-1794 (La. App. 1 Cir. 4/26/17), 220 So.3d 35. Judge Crain agreed with the trial court's hearsay rulings, and he found that defendant showed no violation of his right to present a defense therefrom because "the primary criterion for admissibility—the trustworthiness and reliability of the statements—was not established." *Id.*, 15-1794, pp. 23–24, 220 So.3d at 52. Judge Holdridge, concurring, opined that the trial court erred in excluding most of the statements from evidence because they were "not hearsay" and offered to prove "that persons other than the defendant made statements that Ricky Magee killed the victim." *Id.*, 15-1794, concurrence at p. 1, 220 So.3d at 59–60. Nonetheless, Judge Holdridge found the error to be harmless.

Judge Welch dissented. He opined that "the trial court's blanket ruling that the evidence at issue was not admissible as an exception to hearsay was clearly erroneous" because of the nature of the statements and the requisite degree of

---

[1] Ricky Magee was available and willing to be called as a defense witness, but defense counsel expected Ricky to testify in a manner similar to his interview with the police, wherein he disclaimed any responsibility for the murders. Defense counsel proffered a transcript of this interview so that the impact of the excluded evidence could be analyzed.

corroboration present. *Id.*, 15-1794, dissent at pp. 8–9, 220 So.3d at 58–59. He also believed the trial court's rulings violated defendant's constitutional right to present a defense because "[t]he proffered statements by Monica Simmons and Paul Robinson contained evidence that tended to establish the defendant's innocence by furnishing a basis for the inference that the offenses were committed by Ricky Magee." *Id.*, 15-1794, dissent at p. 9, 220 So.3d at 59.

As Judge Welch noted, the most critical of the excluded witness statements came from Paul Robinson and Monica Simmons. Paul Robinson told police that Ricky confessed to him that he killed Kimberly, stating that "he hated that he had to kill her." This confession purportedly occurred while the men were using drugs together. Paul was initially willing to testify as a defense witness, but the trial court directed a public defender to speak with defendant's proposed witnesses to advise them concerning any Fifth Amendment issues. The following morning, the public defender informed the trial court that Paul would invoke his Fifth Amendment privilege against self-incrimination. The trial court did not inquire as to the basis for this invocation.

Monica Simmons spoke with the same public defender and also chose to invoke her Fifth Amendment privilege against self-incrimination without further examination from the trial court. Defense counsel proffered three statements that Monica had given to the police and two statements from lay witnesses concerning information that Monica allegedly relayed to them.

In two of Monica's statements to the police, she denied any involvement in, or direct knowledge of, the murders. However, Monica's story changed slightly between these two statements. In one, Monica stated that she saw Ricky at Andrew James's house before she went to bed on the night of the murders and then not again until the next morning. In the other, Monica described that she went back to the front

4

of the house and heard Ricky speaking on the phone and indicating that he was about to leave to pick up someone.

In one of the lay witness statements that defense counsel proffered, Elissa Smith[2] relayed to the police yet another iteration of this story. Elissa described that Monica, her cellmate, stated that Ricky told her at Andrew James's house he planned to rob Demille. Knowing Demille to be a drug dealer, Monica purportedly asked Ricky to bring her heroin, expressly directing him not to get crack cocaine. Under this version of the events, Monica did not leave Andrew James's house.

In Monica's remaining statement to the police—which she made after her arrest for the murders—she spontaneously stated, "Alls I did was knock on the door, Ricky done it." Monica made this exclamation between the two other police statements.

Defense counsel's second proffered lay witness statement elaborated upon Monica's exclamation concerning her role in the murders. In this statement, Carla Simmons[3] (no relation to Monica) told the police that she spoke with Monica, who stated that she, Ricky, and Andrew James went to the victims' home on the night of the murders. Monica explained that she was the only person for whom Kimberly would have opened the door at night. According to Carla, Monica said "Ricky did the shooting [but] Kim wasn't suppose to got shot."

Defendant argues that the trial court's exclusion of these statements violated his constitutional right to present a defense. The state argues that the trial court's evidentiary rulings were proper and that their exclusion did not violate defendant's

---

[2] Elissa consulted with the public defender and did not attempt to invoke a Fifth Amendment privilege against self-incrimination.

[3] Carla consulted with the public defender and did not attempt to invoke a Fifth Amendment privilege against self-incrimination.

right to present a defense because the statements were not originally made under circumstances that provided considerable assurance of their reliability.

Fundamental to due process of law is the right to present a defense, *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), and to have it fairly considered by the jury, *Washington v. Texas*, 338 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). "[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S.Ct. 2142, 2146, 90 L.Ed.2d 636 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413 (1984)). This right is abridged by evidence rules that infringe upon a weighty interest of the accused and are arbitrary or disproportionate to the purposes they are designed to serve. *Holmes v. South Carolina*, 547 U.S. 319, 324, 126 S.Ct. 1727, 1731, 164 L.Ed. 2d 503 (2006) (quotation marks and citations omitted).

In *Chambers*, the Supreme Court discussed the constitutional right to present a defense in the context of a ruling excluding evidence of third-party guilt. The defendant in *Chambers* called as a witness a man named McDonald, who had previously confessed to the murder for which he was on trial. *Chambers*, 410 U.S. at 291, 93 S.Ct. at 1044. After McDonald repudiated his prior confession during the state's cross-examination, Chambers requested and was denied permission to examine McDonald as an adverse witness because of Mississippi's "voucher" rule, which prevented him from impeaching his own witness. *See id.*, 410 U.S. 295–96, 93 S.Ct. at 1046. Further, because Mississippi's hearsay rule did not include an exception for statements against penal interest, Chambers was not allowed to introduce evidence that McDonald made self-incriminating statements to three other persons. *See id.*, 410 U.S. at 298–300, 93 S.Ct. at 1047–48. Noting that the hearsay statements Chambers sought to introduce were "made and subsequently offered at

trial under circumstances that provided considerable assurance of their reliability," *id.*, 410 U.S. at 300, 93 S.Ct. at 1048, the Supreme Court concluded "that the exclusion of this critical evidence, coupled with the State's refusal to permit Chambers to cross-examine McDonald, denied him a trial in accord with traditional and fundamental standards of due process." *Id.*, 410 U.S. at 302, 93 S.Ct. at 1049.

In the instant matter, we find that the trial court's evidentiary rulings constituted an arbitrary restriction upon defendant's right to present a defense because they were underpinned by recognitions of Fifth Amendment privilege that fail to survive scrutiny. The trial court allowed Paul Robinson and Monica Simmons to invoke the privilege with no meaningful inquiry.

This Court has held that the proper exercise of the privilege against self-incrimination for a witness, as opposed to a defendant:

> requires that the witness take the stand and answer the questions put to him, save for those instances where it is evident from the implication of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.

*State v. Wilson*, 394 So.2d 254, 258 (La. 1981). In contrast, "it is not necessary for a witness *charged with participating in the same crime for which the defendant is being tried* to assert the privilege on a question by question basis when it is apparent that the witness will be asked to testify only regarding matters which could be expected to require the invocation of the privilege." *State v. Brown*, 514 So.2d 99, 110 (La. 1987) (emphasis added); *see also* 1 McCormick on Evid. § 130 (7th ed.) ("Generally, a witness must submit to questioning and invoke the privilege in response to each specific question. A witness has no right to refuse either to appear or to be sworn as a witness. Ordinarily, then, a witness must submit to a series of questions and assert the privilege in response to each one.").

There was no legal justification for the trial court's allowance of Paul Robinson to assert a blanket Fifth Amendment privilege against self-incrimination. The only potential pitfalls in Robinson's testimony that might have impinged upon his right against self-incrimination were his admission that he was smoking and snorting drugs when he spoke to Ricky and possibly his statement that he, as a felon, was in the same room as someone else who possessed a handgun. The trial court easily could have required a question-by-question privilege invocation as to each of these facts, and the state arguably could have introduced these facts as statements against Robinson's interest under La.C.E. art. 804(B)(3) in order to undermine his credibility. Had Robinson been compelled to testify, Ricky's alleged confession to him would itself have been admissible under La.C.E. art. 801(D)(1)(a),[4] subject to that provision's corroboration requirements. Admission of that statement would have been a substantial step toward defendant's ultimate goal of advancing the narrative that Ricky murdered the victims.

Monica Simmons's blanket invocation of the privilege rests upon more solid legal footing. At least three of her five proffered statements—one to the police and two to lay witnesses—tended to subject her to direct criminal consequences of varying degrees in connection with the victims' deaths. *See* R.S. 14:24 ("All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals."). As a result, however, the trial court's exclusion of these statements

---

[4] Under La.C.E. art. 801(D)(1)(a), a statement is not hearsay if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is, in a criminal case, inconsistent with his testimony, provided that the proponent has first fairly directed the witness' attention to the statement and the witness has been given the opportunity to admit the fact and where there exists any additional evidence to corroborate the matter asserted by the prior inconsistent statement.

8

from evidence failed to follow the naturally flowing logical principle: if there was a valid basis to allow Monica to invoke her Fifth Amendment privilege, one or more of her prior statements should have qualified as admissible statements against her interest under La.C.E. art. 804(B)(3).[5] Admission of Monica's inculpatory statements also would have substantially furthered defendant's attempt to demonstrate third-party guilt.

The issues surrounding the trial court's evidentiary rulings are exacerbated by the state's grant of immunity to its primary witnesses, Britney Farrell and Felicia Brewer Wilson. Both witnesses were granted complete immunity, with the exception that the state might seek to prosecute them for perjury for any false testimony at trial. The state possessed, in granting immunity, a tool that it could use to compel their presence on the stand. *See* La.C.Cr.P. art. 439.1(C) ("The witness may not refuse to comply with the order on the basis of his privilege against self incrimination . . . ."). Defendant had no corresponding avenue for securing the testimony of two of his three most important witnesses, and the trial court failed to regulate privilege invocations resulting in defendant not being afforded an opportunity to present this critical evidence.

The state correctly argues that the excluded out-of-court statements pose trustworthiness and corroboration issues. However, the "against interest" requirement assures some degree of trustworthiness, because a person ordinarily does not make a statement that is disadvantageous to himself without substantial

---

[5] A statement against interest is one "which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to . . . criminal liability . . . that a reasonable man in his position would not have made the statement unless he believed it to be true." La.C.E. art. 804(B)(3). A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement. *Ibid.* Statements against interest are not excluded by the hearsay rule if the declarant is unavailable as a witness, such as where he "[i]s exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of his statement." La.C.E. art. 804(A)(1).

reason to believe that the statement is true. *See State v. Hammons*, 597 So.2d 990, 996 (La. 1992). The burden of satisfying the corroboration requirement rests with the accused and may be satisfied by evidence independent of the statement which tends, either directly or circumstantially, to establish a matter asserted by the statement. *See id.*, 597 So.2d at 996–97. Typical corroborating circumstances include statements against the declarant's interest to an unusual or devastating degree, or the declarant's repeating of consistent statements, or the fact that the declarant was not likely motivated to falsify for the benefit of the accused. *See id.*, 597 So.2d at 997.

Ricky's alleged statement to Paul Robinson admitting that he hated to have shot and killed Kim was clearly against his interest to "an unusual and devastating degree," and he "was not likely motivated to falsify for the benefit of the accused." *Ibid.* This statement was further independently corroborated by Monica's statement to the police that she knocked on the door and "Ricky done it" and her alleged statement to Carla Simmons that she knocked on the door and heard gunshots after Ricky entered. Additionally, the fact that police arrested Ricky pursuant to a warrant based upon probable cause lends yet another degree of corroboration to the statement. We find that the test for admissibility under La.C.E. art. 801(D)(1)(a)— "where there exists any additional evidence to corroborate the matter asserted by the prior inconsistent statement"—was met under these circumstances.

Similarly, Monica's exclamation to the police and her alleged statement to Carla Simmons were against her interest "to an unusual and devastating degree," and she "was not likely motivated to falsify for the benefit of the accused." *Hammons*, 597 So.2d at 997. Ricky's purported statement to Paul Robinson provides a degree of corroboration to Monica's statements, as does the issuance of a warrant for her arrest. Monica's invocation of her Fifth Amendment privilege also serves as a

corroborating circumstance that tends to clearly indicate the trustworthiness of her statement. *See* La.C.E. art. 804(B)(3).

The state is correct that Monica's five statements, when viewed as a whole, lack internal consistency. Although the conflicting nature of these statements is a factor in the analysis of corroborating circumstances, "the rule does not require that the statements themselves be independently proved to be accurate; rather it requires only that corroborating circumstances indicate trustworthiness." 2 McCormick on Evid. § 319 (7th ed.). The fundamental nature of the right to present a defense warrants erring on the side of admissibility in this case, especially where the conflicting statements present the state with an efficient avenue of attacking defendant's theory.[6]

The state also contends that Ricky's statement to Paul Robinson is not trustworthy because of the drug use and other circumstances surrounding its making. However, these facts speak to Paul Robinson's credibility, not to the credibility of Ricky's statement. "As a matter of standard hearsay analysis, the credibility of the in-court witness regarding the fact that the statement was made is not an appropriate inquiry." 2 McCormick on Evid. § 319 (7th ed.). Thus, the credibility of Paul Robinson or any other witness testifying to an out-of-court statement is not a factor in whether those out-of-court statements are admissible. Any such witness's credibility is still a proper consideration for the weight a jury might attach to the out-of-court statements.

---

[6] In ruling the totality of defendant's proffered evidence inadmissible for any purpose, the trial court also failed to recognize the potential extrinsic impeachment value for this evidence as it related to any conflicting testimony that Ricky might have given. *See* La.C.E. art. 607(D)(2). "A prior inconsistent statement, when offered to attack the witness' credibility, is not hearsay; the fact that the words were spoken has independent relevance, regardless of the truth of the words." Frank L. Maraist, et al., 19 La.Civ.L. Treatise, *Evidence and Proof* § 9.6 (2d ed. 2018 update).

The exclusion of this evidence is not amenable to a harmless error analysis under the circumstances of this case. In *Holmes*, 547 U.S. at 330, 126 S.Ct. at 1734 (emphasis in original), the United States Supreme Court noted that "[j]ust because the prosecution's evidence, *if credited*, would provide strong support for a guilty verdict, it does not follow that evidence of third-party guilt has only a weak logical connection to the central issues in the case." Here, the state's evidence provided sufficient, but not strong or overwhelming, support for the jury's guilty verdicts. "The point is that, by evaluating the strength of only one party's evidence, no logical conclusion can be reached regarding the strength of contrary evidence offered by the other side to rebut or cast doubt." *Id.*, 547 U.S. at 331, 126 S.Ct. at 1735. As a result, we cannot say that the guilty verdicts rendered in this case were surely unattributable to the trial court's errors. *See Sullivan v. Louisana*, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993).

Thus, we find that the trial court's evidentiary rulings, when combined with its failure to properly address the attendant privilege invocations, violated defendant's right to present a defense. Therefore, we reverse the judgment of the court of appeal, and remand this matter to the district court for a new trial.

**REVERSED AND REMANDED**

SUPREME COURT OF LOUISIANA

No. 2017-K-0908

STATE OF LOUISIANA

VERSUS

JEREMY WILSON

ON WRIT OF CERTIORARI
TO THE COURT OF APPEAL
FIRST CIRCUIT, PARISH OF WASHINGTON

**GUIDRY, J., dissents and assigns reasons.**

There can be no doubt a criminal defendant has a fundamental right to present a defense and to have it fairly considered by the jury. *Chambers v. Mississippi*, 410 U.S. 284 (1973); *Washington v. Texas*, 338 U.S. 14 (1967). However, that right is not unfettered, as the Supreme Court in *Chambers* explained. While otherwise inadmissible evidence such as hearsay might be admissible so as to ensure the defendant's right to present a defense, the Supreme Court cautioned that such hearsay statements must be "originally made and subsequently offered at trial under circumstances that provide[] considerable assurance of their reliability." *Chambers*, 410 U.S. at 300.

In the instant case, I agree with the trial judge and the author of the court of appeal opinion that the out-of-court statements of Paul Robinson and Monica Simmons were inadmissible hearsay because they were not reliable statements against interest, nor in the case of Ms. Simmons, an excited utterance. The various statements are more thoroughly recited in the court of appeal opinion. Notably, Ricky Magee, whom the defense alleges is the true killer, was available to testify, and had consistently denied being involved in the murders. As the defense concedes,

his out-of-court statements, which would include his alleged confession to Paul Robinson, constitute inadmissible hearsay. Magee's alleged confession to Robinson would only have been admissible possibly as impeachment evidence against Magee had he been called to testify at trial. But he was not called, and thus the alleged confession to Robinson had no other basis for admission.

The majority opinion finds the trial court could have better handled the invocations of their 5th Amendment privilege against self-incrimination for Robinson and Simmons, and bases much of its analysis of the reliability of their out-of-court statements on how the trial judge should have conducted the trial. But as the State points out, the defense, for whatever reasons, did not object to the trial court's finding that these two witnesses were unavailable to testify in any capacity based on the invocation of their right against self-incrimination. This court should not supply the defense objection and then set forth how the trial court should have conducted the testimony of these witnesses to bootstrap the reliability of the out-of-court statements.

Ultimately, even though the statements of Robinson and Simmons were inadmissible hearsay, they could have been otherwise admissible to ensure the defendant's right to present a defense so long as they were "originally made and subsequently offered at trial under circumstances that provided considerable assurance of their reliability." *Chambers*, 410 U.S. at 300. However, this case is vastly different from the circumstances faced by the Supreme Court in *Chambers*. There, the man whom the defendant asserted was the true killer had at one point confessed via affidavit to committing the crime, but later recanted and testified at trial denying any involvement. The question for the *Chambers* Court was whether that man's alleged out-of-court confessions to three other people were admissible on

2

the basis that excluding them as required by Mississippi state law would deny the defendant his right to present a defense. The *Chambers* court ultimately found the out-of-court statements were sufficiently "made and subsequently offered at trial under circumstances that provided considerable assurance of their reliability." *Id.* Under the circumstances of the instant case, I disagree that the trial court abused its discretion in finding the hearsay statements of Robinson and Simmons were not originally made and subsequently offered at trial under circumstances that provided considerable assurance of their reliability. Magee has consistently denied involvement in the crimes, having first approached the police voluntarily after the murders. Robinson admitted that he and Magee had been consuming various narcotics at the time Magee allegedly told him he felt remorse at having to kill one of the victims. Simmons, as the lower courts found, had provided conflicting accounts of her whereabouts the night of the murders such that her statements were rendered internally inconsistent. Further, she voluntarily implicated Magee, telling police he had committed the offenses, only after she herself was arrested. This thicket of out-of-court hearsay statements, despite the majority's allowance that they need not be independently proved to be accurate, were not made or offered at trial with the corroborating circumstances that sufficiently demonstrate their trustworthiness, as envisioned by *Chambers*. In my view, the trial court did not abuse its discretion in so finding, and thus the lower court properly disallowed admission of the statements in evidence. Accordingly, I respectfully disagree with the majority's holding that the trial court's rulings violated the defendant's right to present a defense.