488 So.2d 1238 (1986)
STATE of Louisiana
v.
Lawrence KIHNEL, II.
No. KA-4610.
Court of Appeal of Louisiana, Fourth Circuit.
May 12, 1986.
Rehearing Denied June 18, 1986.
Patrick Fanning, New Orleans, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., H.T. Cox, Asst. Dist. Atty., New Orleans, for appellee.
Before BARRY, CIACCIO and LOBRANO, JJ.
CIACCIO, Judge.
After a bench trial the judge found defendant guilty as charged of conspiracy to commit first degree murder, La.R.S. 14:26 and 14:30, and conspiracy to commit aggravated arson, La.R.S. 14:26 and 14:51. Defendant appeals raising a single issue for our consideration: can there be a conspiracy under La.R.S. 14:26 when defendant's only alleged co-conspirators are a state informer and an undercover police officer who only pretend to conspire? We answer that there can be no conspiracy. We, therefore, reverse defendant's convictions.
The facts are uncontroverted. Defendant owned at least two pieces of rental property. Defendant employed Steven Brock, a building contractor, to perform renovations on one piece of property. On the morning of October 17, 1984, Mr. Brock met with defendant to secure reimbursement for materials purchased in the renovation. During this meeting defendant indicated that he was having financial problems: the cost of the renovation was exceeding his budget and another piece of rental property which he owned was becoming a financial drain.
Defendant asked Mr. Brock if he would "torch" the property being renovated, or could he find someone who would burn the building. Defendant stated that the arson needed to be accomplished before October 22, 1984, because that was when the insurance expired. He showed Mr. Brock the insurance policy. Defendant further indicated his desire to have other similar tasks performed and requested that Mr. Brock meet him at his house at 6:00 p.m. if he was interested.
Mr. Brock immediately contacted the F.B.I. and the New Orleans Fire Department Arson Squad. He informed them of *1239 his meeting with defendant and of defendant's request. Mr. Brock was instructed to meet again with defendant and to tell him that he could secure someone to perform the job.
At 6:00 p.m. Mr. Brock met with defendant. Mr. Brock informed defendant that he could get an individual named Wayne, from Houston, Texas, to carry out defendant's desires. Defendant indicated that he also wanted another piece of property burned and that he wanted someone killed.
Defendant talked about some details in connection with burning the buildings and told Mr. Brock to meet him at the renovation site the next morning to finalize the plans, including the plan for murder. Defendant paid Mr. Brock $400.00 as a downpayment on the agreed price of $800.00 for burning one building and $1,000.00 for burning the other. The price for the murder would be decided later.
Mr. Brock informed the law enforcement agencies of the details of his meeting with defendant. The next morning Mr. Brock avoided meeting with defendant because the police wanted to finalize their plans before the next meeting. An undercover police officer was to act as the "hit man." That is, he would pretend to be Wayne from Houston prepared to burn the buildings and murder someone.
At 4:15 p.m. from the F.B.I. office in New Orleans, Mr. Brock telephoned defendant and set up a meeting for 6:00 p.m. At the 6:00 p.m. meeting Mr. Brock introduced the undercover officer to defendant. Defendant described to the officer the places he wanted burned, and stressed the importance that they be completely destroyed. Defendant gave Mr. Brock a check for $1,400.00 to cover the remainder due on the agreed total price of $1,800.00.
Defendant then discussed the murder, described the victim, and agreed to a price of $2,000.00 to be paid later plus jewelry worth approximately $3,000.00 which the victim would be carrying in a gym bag at the time of the murder. "Wayne" could keep the jewelry. The buildings were to be burned that night and the murder committed the next morning.
Defendant was arrested later that evening.
Louisiana's criminal code defines criminal conspiracy as follows:
Section 26. Criminal conspiracy
A. Criminal conspiracy is the agreement or combination of two or more persons for the specific purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination.
If the intended basic crime has been consummated, the conspirators may be tried for either the conspiracy or the completed offense, and a conviction for one shall not bar prosecution for the other.
La.R.S. 14:26. This definition adopts the traditional common-law view of conspiracy as an entirely bilateral or multilateral relationship. This view is inherent in the use of the terms "two or more persons." See Wechsler, Jones and Korn, The Treatment of Incohate Crimes in the Model Penal Code of the American Law Institute: Attempt, Solicitation, and ConspiracyPart II, 61 Colum.L.Rev. 957, 965-966 (1961).
Many jurisdictions have elected to follow the American Law Institute's Model Penal Code recommendation that conspiracy be redefined as a "unilateral" crime. (Model Penal Code Section 5.03 (Proposed Official Draft 1962).) See Note, Conspiracy: Statutory Reform Since the Model Penal Code, 75 Colum.L.Rev. 1122, 1135-1145 (1975). The unilateral approach has been criticized as contrary to the historical and theoretical underpinnings of conspiracy law and as potentially abusive of due process. See Burgman, Unilateral Conspiracy: Three Critical Perspectives, 20 DePaul L.Rev. 75 (1979). Some state courts adhere to the traditional approach despite statutory reform to the unilateral approach, while in many states the unilateral approach has *1240 been rejected both by the language of the statute and by subsequent state law. See Burgman, supra, fn. 3 on pp. 75-76. The federal definition retains the traditional "bilateral" formulation. See 18 U.S.C. Sec. 371.
Under a unilateral formulation, the crime of conspiracy is committed when a person agrees to proceed in a prohibited manner; under a bilateral formulation, the crime of conspiracy is committed when two or more persons agree to proceed in such manner. See Note, supra, 75 Colum.L.Rev. at 1136. Under either approach, the agreement is all-important to conspiracy. Under the unilateral approach, as distinguished from the bilateral approach, the trier-of-fact assesses the subjective individual behavior of a defendant, rendering irrelevant in determining criminal liability the conviction, acquittal, irresponsibility, or immunity of other co-conspirators. See Burgman, supra, at pp. 76-77. Under the traditional bilateral approach, there must be at least two "guilty" persons, two persons who have agreed. Discussing the agreement dimension of the bilateral approach the following example has been provided:
Assume that A wants to burglarize a store and thus approaches B to solicit his assistance in the commission of the crime, that upon hearing A's plan B manifests his complete concurrence in the scheme and expresses his willingness to participate, but that B secretly intends not to go through with the plan and has merely feigned agreement because he wishes to trap A. Is there a conspiracy under these circumstances? No is the answer consistently given by the courts. B quite clearly is not guilty of conspiracy, if for no other reason because he does not have the intent-to-burglarize mental state; A does have the requisite mental state, but yet may not be convicted of conspiracy because there has been no agreement and thus no criminal act. (footnotes omitted)
W. LaFave & A. Scott, Criminal Law, pp. 461-462 (1972).
In United States v. Rosenblatt, 554 F.2d 36 (2d Cir.1977), the court provided the following synopsis of "The Law of Agreement" under the federal law's bilateral formulation.
A conspiracy is an "agreement among the conspirators." United States v. Falcone, 311 U.S. 205, 210, 61 S.Ct. 204 [207], 85 L.Ed. 128 (1940) (emphasis added). A "meeting of minds" is required. Krulewitch v. United States, 336 [207], U.S. 440, 448, 69 S.Ct. 716, [720], 93 L.Ed. 790 (1949) (Jackson, J., concurring). "[U]nless at least two people commit [the act of agreeing], no one does. When one of two persons merely pretends to agree, the other party, whatever he may believe, is in fact not conspiring with anyone." Developments in the Law-Criminal Conspiracy, 72 Harv.L.Rev. 920, 926 (1959) [hereinafter cited as Developments]; see Sears v. United States, 343 F.2d 139 (5th Cir.1965) (no conspiracy with government informant who secretly intends to frustrate the conspiracy); Delaney v. State, 164 Tenn. 432, 51 S.W.2d 485 (1932) (no conspiracy with person who feigns agreement). (footnotes omitted)
554 F.2d at 38. The federal courts have held that "a conspiracy may be proved even though the link connecting many of the activities of the conspirators is a Government informer." Sigers v. United States, 321 F.2d 843, 848 (5th Cir.1963); See also United States v. Martino, 648 F.2d 367, 405 (5th Cir.1981) and United States v. Klein, 560 F.2d 1236 (5th Cir.1977), cert. denied, 434 U.S. 1073, 98 S.Ct. 1259, 55 L.Ed.2d 777 (1978). But the courts have also held that "as it takes two to conspire, there can be no indictable conspiracy with a government informer who secretly intends to frustrate the conspiracy." Sears v. United States, 343 F.2d 139, 142 (5th Cir. 1965), citing United States v. Wray, 8 F.2d 429 (N.D.Ga.1925). The import of the federal courts' decisions is that there can be no conspiracy when the only other co-conspirator is a government informer. United States v. Seelig, 498 F.2d 109 (5th Cir. 1974).
*1241 Although never having directly addressed the issue now before this court, the Louisiana Supreme Court has consistently indicated that "[t]o constitute the crime [of conspiracy], there must be at least two or more conspirators ...," State v. Rogers, 375 So.2d 1304, 1313 (La.1979), who form "an agreement to commit a crime ...," State v. Richards, 426 So.2d 1314, 1316 (La.1982). We have found only one reported decision of a Louisiana court which has directly addressed this issue. The Second Circuit Court of Appeal has held that La. R.S. 14:26 "requires criminal intent in the mind [sic] of at least two persons...." State v. Joles, 485 So.2d 212 (La.App.2d Cir.1986). Thus, the court found that there was no criminal conspiracy between two people when one of those persons, as a state agent, had no intention to commit the crime involved.
Under the bilateral formulation for conspiracy adopted by our legislature when it enacted La.R.S. 14:26, we conclude that in Louisiana there can be no conspiracy when the only supposed co-conspirators are a state informer and an undercover police officer who both only pretend to conspire.
The facts of this case reveal that defendant's only "conspirators" were Steven Brock and an undercover police officer. Steven Brock, immediately upon learning of defendant's desires, contacted law enforcement agencies who instructed him to continue to meet with defendant and to feign agreement. He never agreed to conspire with defendant. The undercover police officer likewise only pretended to conspire, he never agreed to commit any crime. The intent of both Mr. Brock and the officer was not to conspire with defendant, but secretly to frustrate his plans.
While the actions of Mr. Brock and the involved law enforcement agencies were laudable, and appropriate under the circumstances, under Louisiana law defendant is not guilty of conspiracy.
The possibility of attempted conspiracy has been suggested, but such suggestions have been made in passing and without comment, reason or discussion. See Developments in the Law-Criminal Conspiracy, 72 Harv.L.Rev. 920, 927, fn. 35 (1959) cited in LaFave & Scott, supra, p. 462. Attempt and conspiracy are both incohate crimes. Just as there can be no attempt to commit an attempt, such as "attempted assault" (See La.R.S. 14:27, Reporter's Comment), nor can there be an attempt to incite a felony (See La.R.S. 14:28, Reporter's Comment), we conclude that under the bilateral formulation of conspiracy there can be no "attempted conspiracy."
As part of the very foundation of criminal law, crimes include both a criminal act (or omission) and a criminal intent. See LaFave & Scott, supra, Section 2, and Developments, supra, 72 Harv.L.Rev. at p. 925. "Attempted conspiracy" suggests a crime formed only of criminal intent, as it is the agreement which constitutes the act. We are not prepared to judicially legislate such a crime. We confirm our position by noting that when listing the responsive verdicts to particular crimes, La.C.Cr.P. Art. 814, the legislature did not include "attempt" under the only conspiracy crime listed, Conspiracy to Violate any Provision of the Uniform Controlled Dangerous Substances Law.
For the reasons provided, we reverse defendant's conviction and enter a judgment of acquittal as to the charges of conspiracy to commit first degree murder and conspiracy to commit aggravated arson.
REVERSED; JUDGMENT OF ACQUITTAL ENTERED.
LOBRANO, J., concurs with reasons.
LOBRANO, Judge, concurring.
I concur in the majority result because of the statutory definition of conspiracy. This result, however, should not be construed as a double jeopardy defense to other possible criminal violations.