503 So.2d 32 (1986)
STATE of Louisiana
v.
Larry B. MARKS.
No. 86 KA 0783.
Court of Appeal of Louisiana, First Circuit.
December 23, 1986.
Rehearing Denied February 19, 1987.
Writ Denied May 15, 1987.
Bernard E. Boudreux, Jr., Dist. Atty., James R. McClelland, Ass't Dist. Atty., Franklin, for appellee.
Michael A. Thomas, Franklin, for appellant.
Before EDWARDS, WATKINS and LeBLANC, JJ.
*33 WATKINS, Judge.
Defendant, Larry B. Marks, was found guilty of two counts of distributing marijuana, and appeals. The primary issues before us concern the warrantless tape recording of the defendant during a marijuana sale to an undercover officer and the defense of entrapment. For the reasons below, we affirm defendant's convictions.

FACTS
The record reflects that defendant was arrested after making two marijuana sales to undercover officer Donald Givens of the Louisiana State Police in October and November of 1984. Before these sales, Trooper Givens and Trooper Patrick LaSalle were assigned to make undercover drug purchases in St. Mary Parish. Trooper LaSalle learned from various informants that the defendant might be willing to sell them marijuana.
The first sale took place on October 20, 1984. After attempting to find the defendant at his home, Trooper Givens and an informant drove to a car wash in Franklin, Louisiana, where they met the defendant and a friend of his, Garland Conners. The informant told the defendant they wanted to buy some marijuana; the defendant walked to his car, and returned carrying a white towel. Inside Trooper Given's undercover car, defendant opened the towel to reveal a number of plastic baggies, or "lids," of marijuana. Trooper Givens selected one bag, and bought it from the defendant for fifty dollars. During the transaction, Trooper Givens was wearing a concealed microphone and transmitter, and the conversation was monitored and tape recorded by Trooper LaSalle.
The second sale took place thirteen days later, on November 2, 1984. At approximately 9:00 p.m., Trooper Givens drove, alone, to the defendant's house, and asked to buy more marijuana. Defendant walked to his car, and took a brown paper bag from under the driver's seat. Defendant said that he had some fifty dollar bags, but that he could prepare any lesser amount. Trooper Givens then asked for a twenty dollar amount. Defendant poured some marijuana into a coin envelope, handed the envelope to Trooper Givens, and took twenty dollars in return.
Defendant was charged by bill of information with two counts of distribution of marijuana in violation of LSA-R.S. 40:966(A). He entered a plea of not guilty and waived his right to a jury trial. The trial court found defendant guilty as charged and sentenced him to serve five years imprisonment at hard labor on each count. These sentences were suspended and defendant was placed on supervised probation for five years, subject to specified conditions, including one year imprisonment in the parish jail. In addition, the trial court sentenced defendant to pay a fine of $2,000.00 and court costs; in default of such payments defendant was to serve six months imprisonment in the parish jail. Defendant has appealed urging six assignments of error, which challenge the admission of a tape recording of the October 20 sale (assignments # 1, # 2, # 3, and # 4), the rejection of the defense of entrapment (assignment # 5), and the trial court's failure to dismiss the charges because of alleged governmental misconduct (assignment # 6).

STATEMENT OF LAW

Admission of the Tape Recordings
By his first four assignments of error, defendant argues that a tape recording of the October 20 marijuana sale was improperly admitted at trial. Defendant asserts that, because his conversations were recorded without a warrant and without his consent, he was deprived of his constitutional right to privacy under the Louisiana and United States Constitutions.
Article I, section 5 of the Louisiana Constitution of 1974 provides, in part, that every person shall be secure in his person and communications against unreasonable searches, seizures, or invasions of privacy. *34 In addition, it is provided that no warrant shall issue without probable cause.[1]
The Louisiana Supreme Court held, on rehearing in State v. Reeves, 427 So.2d 403, 410 (La.1982), that "the use of electronic surveillance equipment, which is hidden from view on the person of a consenting party to a conversation, does not `invade the privacy' of the other party or parties in the conversation within the meaning of our Constitution, and, therefore, the warrant requirement does not attach." The conversation recorded by Trooper Givens and Trooper LaSalle took place in public, at a car wash, and was recorded with the consent of one of the parties to the conversation, Trooper Givens. Under the circumstances, the tape recording did not violate the Louisiana Constitution and was properly admitted.
The Fourth Amendment to the United States Constitution, which is made applicable to the states by the Fourteenth Amendment, is, in many respects, similar to Article I, § 5 of the 1974 Louisiana Constitution. "Each is concerned with the protection of people and their privacy against unreasonable governmental intrusion." State v. Reeves, 427 So.2d at 412. The Fourth Amendment provides, in part, that every person shall be secure in his person against unreasonable searches and seizure, and that no warrants shall issue without probable cause.[2]
In United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971) the Supreme Court held that consensual electronic surveillance, that is, surveillance with the consent of a party to the conversation, was not subject to the Fourth Amendment's warrant requirement, because it did not invade the constitutionally justifiable expectations of privacy of the defendant. Compare Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (recordings made from non-consensual electronic surveillance were inadmissible in evidence absent a warrant). In White, a government informer concealed a radio transmitter on his person and engaged in conversations with the defendant. Government agents who monitored the radio frequency were able to overhear certain incriminating statements by the defendant, but no warrant had been obtained. The Supreme Court upheld the trial court's admission of the agents' testimony, noting that each person who enters into a conversation assumes the risk that his listener may be a police agent who may report the conversation. Justice White, writing for the Court, made the following comments, which we believe are applicable to this case:
Concededly a police agent who conceals his police connections may write down for official use his conversations with a defendant and testify concerning them, without a warrant authorizing his encounters with the defendant and without otherwise violating the latter's Fourth Amendment rights. Hoffa v. United States, 385 U.S. [293] at 300-303, [87 S.Ct. 408 at 412-414], 17 L.Ed.2d [374] at 381, 382. For constitutional purposes, no different result is required if the agent instead of immediately reporting and transcribing his conversations with defendant, either (1) simultaneously records them with electronic equipment which he is carrying on his person, Lopez v. United States, supra [373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462]; (2) or carries radio equipment which simultaneously transmits the conversations either to recording equipment located elsewhere or *35 to other agents monitoring the transmitting frequency. On Lee v. United States, supra [343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270]. If the conduct and revelations of an agent operating without electronic equipment do not invade the defendant's constitutionally justifiable expectations of privacy, neither does a simultaneous recording of the same conversations made by the agent or by other from transmissions received from the agent to whom the defendant is talking and whose trustworthiness the defendant necessarily risks.
United States v. White, 401 U.S. at 751, 91 S.Ct. at 1125-26. Under the circumstances before us, the tape recording did not violate the United States Constitution and was properly admitted. These assignments of error are without merit.

Entrapment
By his fifth assignment of error, defendant argues that the trial court erred in failing to find the defendant not guilty on the basis of his affirmative defense of entrapment. He argues that he had no prior disposition to commit either of the instant offenses, and that the offenses were instead designed and initiated by the undercover officers and their informant.
The law on entrapment is set forth in State v. Batiste, 363 So.2d 639 (La.1978):
Under the generally accepted view an entrapment is perpetrated when a law enforcement official or a person acting in cooperation with such an official, for the purpose of obtaining evidence of the commission of an offense, solicits, encourages, or otherwise induces another person to engage in conduct constituting such offense when he is not then otherwise disposed to do so.... The inquiry under this test goes beyond the fact that criminal conduct was committed at the instance of law enforcement officials. Once government instigation is shown, the inquiry focuses upon the predisposition of the defendant. Under this test, the ultimate question is whether the inducement by the officers or the defendant's own predisposition caused the criminal conduct in question.
Id., 363 So.2d at 641 (citations and footnote omitted).
Having recognized the defense of entrapment, the Louisiana Supreme Court has focused its attention on the predisposition of the defendant to commit the crime at issue as well as the conduct of the police. State v. Richards, 426 So.2d 1314, 1318 (La.1982); State v. Augustus, 479 So.2d 590, 591 (La.App. 1st Cir.1985). The entrapment defense will not lie if officers or agents merely furnish a defendant predisposed to commit the crime opportunities to do so. State v. Moody, 393 So.2d 1212, 1216 (La.1981); State v. Augustus, 479 So.2d at 591. The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. State v. Augustus, 479 So.2d at 591.
In defendant's own trial testimony in regard to the October 20 drug sale, he admitted that, before getting inside Givens's car he and Garland Conners had agreed to sell the marijuana and that he would not have retrieved the marijuana from his own car if he had not planned to sell it. In regard to the November 2 drug sale, defendant testified that Givens came to his residence and asked to purchase some marijuana. Defendant's testimony reflects that he responded that he had only one bag, but he would fix Givens "something."
The evidence of record, particularly the testimony of Trooper Givens, construed in the light most favorable to the prosecution, shows beyond a reasonable doubt that the undercover officer merely furnished the opportunity for defendant to distribute marijuana on the date in question. The predisposition of defendant to be involved in activities of this type resulted in the criminal conduct in this case. This assignment is therefore without merit.

Governmental Misconduct
By his sixth assignment of error, defendant argues that the trial court erred by not dismissing the charges against him on the basis of evidence controverting the state's stipulation at a hearing on a motion to *36 disclose the identity of the state's confidential informant. Defendant argues that the state stipulated that the informant did not participate in the drug transactions giving rise to the instant convictions, and that defendant's own testimony, and that of Garland Conners, shows the informant initiated and induced the October 20 marijuana sale. Defendant concludes that the conduct of Trooper Givens, Trooper LaSalle, and the informant exceeded the bounds of legal propriety and constituted governmental misconduct. He argues that he should prevail on the basis of his contention that the conduct of the governmental agents was so intensive and over-reaching as to violate the principles of fairness and due process.
In Maumus v. Department of Police, New Orleans, 457 So.2d 37 (La.App. 4th Cir.1984), writ denied, 461 So.2d 1054 (La. 1985), the Fourth Circuit set forth the law pertaining to governmental misconduct.
In certain prescribed instances the Government is estopped from bringing a prosecution because of [its] own misconduct. The involvement of the government agents in a crime will bar prosecution if the methods used violate fundamental fairness and due process so as to be characterized as too over reaching....
There is a distinction between `governmental misconduct' and `entrapment' and although the two concepts are similar there exists a major distinguishing characteristic. The defense of entrapment, like the defense of governmental misconduct, is a court created limitation on government activities. Both defenses arise from a strong policy consideration which necessitates fairness.
The point of divergence with regard to the two defenses is in the proof required. In order to prevail on the issue of entrapment, one must prove: (1) inducement by the government and (2) lack of a predisposition by the defendant to commit the particular acts. The lack of predisposition by the defendant to commit the particular acts charged is of no moment when the issue of governmental misconduct is considered. Rather, the thrust of the defense of governmental misconduct is upon the activities of the government agents. The defendant will prevail on the issue of governmental misconduct if it is shown that the conduct of the governmental agents is so intrusive and over-reaching as to be violative of the principles of fairness and due process.
Id., 458 So.2d at 48-49 (citations omitted).
In United States v. Yater, 756 F.2d 1058, 1066 (5th Cir.), cert. denied, ___ U.S. ___, 106 S.Ct. 225, 88 L.Ed.2d 226 (1985), the court observed that a defendant cannot avail himself of the governmental misconduct defense when he has been an active participant in the criminal activity which gave rise to his arrest. A due process violation founded upon the defense of governmental misconduct will be found only in the rarest and most outrageous circumstances. See United States v. Yater, supra.
Here, the record reflects that, before trial, defendant filed a document styled "Motion to Dismiss Indictment or Bill of Informations," and alleged governmental misconduct. At the pre-trial hearing on defendant's motion to dismiss, however, defense counsel addressed only the issue of entrapment. Apparently because of defense counsel's concession that the affirmative defense of entrapment was not the proper subject of a motion to dismiss, the trial court did not rule on the defense motion. We will, nevertheless, address the merits of defendant's allegation of misconduct.
The State apparently stipulated that the confidential informant, who was with Trooper Givens at the Franklin car wash, did not participate in the October 20 marijuana sale. Defendant argues that this statement was misleading and constituted governmental misconduct.
Trooper Givens's testimony shows that it was Givens, and not the informant, who discussed and concluded the sale with defendant on October 20, although the informant had earlier told Conners that Givens wanted to buy marijuana. Whether or not the facts established through trial testimony *37 conflicted with or controverted the State's stipulation, the defendant's allegations of governmental misconduct have not been proven. Likewise, defendant's argument that the warrantless electronic surveillance substantiates his allegation of governmental misconduct is unpersuasive. We previously found no warrant was necessary to undertake the surveillance, and it was hence lawfully conducted.
We find that defendant clearly was an active participant in the instant offenses. Furthermore, we are convinced that the level of governmental activity in this case was not so extreme as to exceed constitutional bounds. Thus, this assignment of error is without merit.
Accordingly, defendant's convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] La.Const. art. I, § 5:

Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason of the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court.
[2] U.S. Const. amend. IV:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.