588 So.2d 1365 (1991)
STATE of Louisiana, Appellee,
v.
Oliver Perry SCOTT, Jr., Appellant.
No. 22817-KA.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1991.
*1366 Richard C. Goorley, Shreveport, for appellant.
William J. Guste, Jr., Atty. Gen., Paul J. Carmouche, Dist. Atty., Dan Keele, Catherine M. Estopinal, Asst. Dist. Attys., Shreveport, for appellee.
Before NORRIS, LINDSAY and BROWN, JJ.
BROWN, Judge.
Defendant, Oliver Perry Scott, Jr. aka "Tip", was tried by jury and convicted of distribution of cocaine, a Schedule II controlled dangerous substance pursuant to LSA-R.S. 40:967 A(1), and adjudicated to be a second felony offender pursuant to LSA-R.S. 15:529.1. Originally Scott was to be tried as a co-defendant with his nephew, Nelson Youngblood aka "Boo", but Youngblood was a fugitive at the time of trial.[1] From a sentence of 18 years at hard labor without benefit of probation, parole or suspension of sentence defendant appeals. Finding no merit to his claims, we affirm his conviction and sentence.
On May 12, 1989, Carl Townley, an undercover narcotics officer with the Caddo-Bossier Narcotics Task Force, was involved in an investigation targeting defendant, Oliver Perry Scott, Jr. Supplied with $200 in marked bills, Officer Townley, who was using the name Ricky, met with a confidential informant. They drove to the Cedar Grove area of Shreveport where they picked up an individual by the name of Antonio Jackson aka "Tony". Tony and the confidential informant were cousins. The three proceeded to the house of Nelson Youngblood who then accompanied them to A.B. Palmer Park in Cedar Grove.
At the park Jackson and Youngblood exited the vehicle and walked approximately 25 yards to where a man identified as defendant was standing under a shed because of a light drizzling rain. While Tony, Youngblood and defendant were talking under the shed, Officer Townley observed Youngblood and the defendant making "some type of hand-to-hand motion" during which defendant passed an object to Youngblood. Youngblood and Jackson returned to the vehicle and Youngblood handed Officer Townley 2 small bags each containing 1/8th of an ounce of crack cocaine also known as an "eight ball". Officer Townley informed Youngblood that he would only give the $200 for the cocaine to the "main man." Tony left the car and again went over to where defendant was standing. They spoke briefly and Tony returned with defendant to the vehicle where Officer Townley handed defendant $200 for one "eight ball" of cocaine.
At trial, Officer Townley positively identified defendant as the person from whom he had bought the cocaine. The defense contested this identification by the officer and presented testimony from the informant, Tony and Cedric Russell. They testified that defendant was not the man from whom Officer Townley purchased the cocaine. Tony identified the man who sold the cocaine as "Ken". The jury obviously chose to believe the testimony of Officer Townley and convicted defendant as charged.
A motion for new trial was filed based upon a letter purportedly signed by Youngblood and notarized by attorney Brenda Ford. In this letter, Youngblood admitted *1367 his involvement in the crime but said that defendant was not the man that distributed the cocaine to Officer Townley. Brenda Ford by stipulation testified that Youngblood came to her office with his mother, that she checked Youngblood's driver's license and that she was convinced that the person who signed the letter was Youngblood. The motion for new trial was overruled.
Youngblood was eventually arrested and the motion for new trial was reopened. Youngblood, against the advice of his attorney, testified at the second hearing on the motion for new trial. He stated that he tricked Officer Townley into thinking that the person he gave the money to was defendant. At the hearing, he identified the person in the park as Ken Loston, who at the time of the hearing was incarcerated on another crime. Again, the motion for new trial was overruled.
Before sentencing, defendant was adjudicated a habitual offender and received a sentence of 18 years at hard labor without benefit of probation, parole or suspension of sentence, with credit for time served. In addition, he was sentenced to pay a fine of $1,000 or serve 1 additional year in jail. This portion of the sentence, however, was suspended as the court found defendant indigent. It is from this conviction and sentence that defendant appeals.
On appeal, defendant argues five assignments of error:
1) The evidence in this case is not sufficient to support a finding of guilt beyond a reasonable doubt.
2) The trial judge erred in overruling defendant's first motion for new trial.
3) The trial judge erred in overruling defendant's second motion for new trial.
4) The trial judge erred in sentencing defendant as a habitual offender pursuant to LSA-R.S. 15:529.1.
5) All errors patent on the face of the record.
In the first assignment, defendant alleges that the evidence is not sufficient to support a finding of guilt beyond a reasonable doubt. When the sufficiency of evidence is challenged on appeal, the standard to be applied is found in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Jackson, supra, holds that after viewing the evidence in a light most favorable to the prosecution, if any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt then the evidence was sufficient.
The defense had three witnesses who testified that the man in the park who sold the cocaine was not defendant. This testimony directly attacked the identification of defendant by Officer Townley. As defendant was found guilty of the charge, the jury must have believed the testimony of Officer Townley and did not believe the three witnesses for the defense.
Where there is conflicting testimony as to factual matters, the determination of the credibility of witnesses is within the sound discretion of the trier of fact. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Marks, 503 So.2d 32 (La. App. 1st Cir.1986), writ denied, 506 So.2d 110 (La.1987). It is not the function of the appellate court to reevaluate the credibility of witnesses. It is the province of the jury, and not of the appellate court, to assess credibility of witnesses. State v. Reaves, 569 So.2d 650 (La.App.2d Cir.1990), writ denied, 576 So.2d 25 (La.1991). Resolution of conflicting testimony is within the sound discretion of the trier of fact. State v. Bonnett, 524 So.2d 932 (La.App.2d Cir. 1988), writ denied, 532 So.2d 148 (La.1988). Juror's credibility determinations will not be disturbed on appeal unless clearly contrary to the evidence. State v. Kidd, 568 So.2d 175 (La.App.2d Cir.1990).
Testifying on behalf of defendant was a female confidential informant, Cedric Russell and Antonio Jackson. All three testified that a person named Ken sold the cocaine in the park that afternoon. That testimony was contradicted by the undercover officer who positively identified defendant as the seller of the cocaine.
The informant's testimony was filled with inconsistencies. She stated that they *1368 picked up Tony Jackson and another young man (Cedric Russell) at Tony's house and then picked up Youngblood. This was contradicted by the surveillance officer. First she stated that Tony and the other man got out of the car and then stated that Youngblood never got back into the car after the drug transaction. She also stated that they took Youngblood home first. Under cross-examination, she admitted to setting the undercover officer up with her cousin Tony to arrange a cocaine buy. The witness cried when asked if her testimony was voluntary.
Cedric Russell testified that he and Tony got into Officer Townley's vehicle and then they picked up another person (Youngblood). When they got to the park, Youngblood got out of the car and went to talk to the cocaine seller. Youngblood returned to the car and gave the dope to the undercover officer. The witness stated positively that defendant was not the person who came to the car to get the money for selling two "eight balls" of cocaine. Russell's testimony was that he was with the female in the back seat while the other three people (Officer Townley, Tony and Youngblood) were in the front seat. Russell stated that he got some money from Tony for participating in the transaction. Russell stated that the seller received $200 and Tony received $50.
Tony's version was that he and Youngblood got out of the undercover vehicle and went to see Ken from whom they received two "eight balls" of cocaine. According to Tony, the undercover officer gave Ken $400. Ken kept $200 and gave Youngblood $200. Youngblood then gave Tony $100. Tony's version was that Russell, Youngblood and the female were in the back seat while Tony sat in the front seat with the officer.
For the prosecution, Officer Townley testified that defendant was the man to whom he gave $200 for an "eight ball" of cocaine on the day in question. In court, Officer Townley identified defendant repeatedly.
Lt. Billy Golden testified that the undercover officer took only $200 of Task Force funds to make the purchase. A third law officer, Bill Duncan, testified that when the group left Tony's home on the way to pick up Youngblood, he observed only three persons in the vehicle, not four.
There is nothing in this record to indicate any abuse of discretion or clear error in the jury's determination that the undercover officer's testimony was credible while finding the three defense witnesses' testimony not credible. As it is the province of the jury, and not of the appellate court, to assess credibility of witnesses their decision will not be disturbed on appeal. Further, after viewing the evidence in the light most favorable to the prosecution this court holds that a rational trier of fact could have found defendant guilty beyond a reasonable doubt.
In Assignments of Error Nos. 2 and 3, defendant contends that the trial court erred in twice denying his motion for new trial.
At the first hearing, defendant's motion for new trial was based upon a written statement by Youngblood. At the time of trial Youngblood's whereabouts were unknown. Before defendant's motion for new trial was heard, Youngblood appeared before an attorney, identified himself and signed a statement which tended to exculpate defendant and incriminate himself. The attorney identified Youngblood by looking at his driver's license and without reading the contents of the statement notarized it to prove that it was indeed signed by Youngblood.
At the hearing, defendant sought to have the statement admitted under an exception to the hearsay rule found in LSA-C.E. Art. 804 B(3). This article allows the introduction of evidence against interest if the declarant (Youngblood) is unavailable. The article requires that the declarant be unavailable and that corroborating circumstances indicate that the statement is trustworthy. The trial judge declined to admit the notarized statement primarily because corroborating circumstances did not support its trustworthiness.
Constitutional guarantees do not assure the defendant the right to the admissibility *1369 of any type of evidence, only that which is deemed trustworthy and has probative value. State v. Governor, 331 So.2d 443 (La.1976). There is nothing in the record to indicate the trial judge was clearly erroneous; however, this issue became moot with the later appearance and testimony of Youngblood.
At the second hearing for new trial, the defense offered the testimony of Youngblood. Youngblood's presence was easily obtained at this time because he had been arrested. After hearing Youngblood's testimony, the trial judge once again denied the motion for new trial finding that Youngblood's testimony was cumulative and would not have affected the outcome of the case.
It is well-established that a new trial will not be granted for newly discovered evidence which is merely cumulative. State v. Dale, 200 La. 19, 7 So.2d 371 (La.1942). Also, defendant knew of his nephew, Youngblood, before trial and producing him after trial, comes in conflict with the last sentence of LSA-C.Cr.P. Art. 854[2] and is not newly discovered evidence. The discovery of the whereabouts of a known witness is not newly discovered evidence. Defendant, however, did not sustain his burden of showing that the evidence, which was a repeat of the evidence given at the trial by other witnesses, would have resulted in a different verdict. Therefore it was not shown that an injustice resulted from the denial of defendant's request for a new trial.
In Assignment of Error No. 4, defendant contends that the trial judge erred in sentencing him as a habitual offender. Defendant argues that because his illegal discharge of a firearm conviction had never been appealed, it was not final. Therefore, it could not be used as a predicate offense for a habitual offender conviction. This specific question has already been dealt with by this court in this case. This court granted a writ application by the State of Louisiana and made it peremptory with the following:
When the defendant committed this felony offense, his prior felony conviction had not been appealed and was then final. Thus it may be used for enhancement purposes under the habitual offender law. LSA-R.S. 15:529.1; State v. Gani, 157 La. 231, 102 So. 318 (1924); State v. Lewis, 564 So.2d 765 (La.App. 2d Cir.1990).
Therefore the ruling of the trial court denying the habitual offender is reversed and the case is remanded for further proceedings.
State v. Scott, No. 22,427-KW, writ denied, 566 So.2d 971 (La.1990).
Finding no merit in defendant's assignments and no errors patent on the face of the record, we affirm.
AFFIRMED.
NOTES
[1] Youngblood, age 18, was arrested after defendant's trial and pled guilty to distribution of cocaine and received a sentence of eight years which was affirmed by this court. State v. Youngblood, 585 So.2d 1259 (La.App. 2d Cir. 1991).
[2] LSA-C.Cr.P. Art. 854 provides in part: The newly discovered whereabouts or residence of a witness does not constitute newly discovered evidence.

Comment (c): The last sentence continues a provision of Art. 513 of the 1928 code, that the newly discovered whereabouts of a witness does not constitute newly discovered evidence....